1    NOTES

2     Friday, October 30, 2015

3     Harnage versus Brighthaupt

4     motion hearing

5              MR. HARNAGE:  Is Mr. Harnage.

6              MR. DEARINGTON:  Is Mr. Dearington.

7    12:33 PM

8              THE COURT:  Good afternoon.  Please be seated

9    everyone.

10             We're here for a follow up status conference.

11   I'll have our pro se plaintiff and counsel for the

12   defendant identify themselves for the record.

13             MR. HARNAGE:  Good afternoon, James Harnage,

14   plaintiff pro se.

15             THE COURT:  Thank you.

16             MR. DEARINGTON:  Good afternoon Your Honor,

17   Robert Dearington for the defendants.

18             THE COURT:  Thank you.

19             Now, with respect to our three summary

20   judgment motions when we were here last I noted the

21   scheduling order with respect to the oppositions to the

22   first motion and the second motion.  Those deadlines for

23   the oppositions being November 13th and December 7th.

24   And then the deadline for filing the third motion for

25   summary judgment has been November 1.  Are we still

    ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    shooting for that Mr. Dearington.

2              MR. DEARINGTON:  I apologize for the delay but

3    the defendants to intend to file an extension motion for

4    extension of time for the filing that.

5              THE COURT:  So that will move back

6    Mr. Harnage's time.  When I issue an all I will have

7    issue you a order that at has the dates for all three.

8              THE COURT:

9              When we were might still be some issues with

10   respect to discovery.  That's my recollection of why

11   we're here.; is that correct.

12             MR. HARNAGE:  There are some issues with

13   discovery Your Honor, that we're going to resolve today

14   hopefully.

15             THE COURT:  Why don't you -- I believe it's

16   discovery the plaintiff is seeking from the defense.

17             MR. HARNAGE:  That's correct.

18             THE COURT:  Why don't we tell me what the

19   issues are then.

20             MR. HARNAGE:  Well, I did just receive more

21   follow up documents this morning.  Maybe 20 minutes ago

22   from counsel.  So that should resolve some of the issues

23   but we do have some minor issues to go over as regards

24   to objections by counsel as to some things that should

25   be produced that counsel believe shouldn't be.

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          If you want to start off request Number 1 or

2     just go through a broad review of what they are and

3     discuss them at that time.

4          THE COURT:  Are there categories or are they

5     each one different in nature.

6          MR. HARNAGE:  Each is different and involving

7     different requests for production.

8          THE COURT:  How manydo we have?

9          MR. HARNAGE:  I have one, two, three, four,

10    five, looks like six or seven on the first requests for

11    production and probably an equal number on the third

12    amended requests for production.

13         THE COURT:  Let's go to the first request

14    Number 1.

15         MR. HARNAGE:  Request Number 1 I asked for --

16    let me pull the request out, Your Honor.  Give me one

17    second.

18         THE COURT:  Do I have a copy of those

19    documents, the requests?

20         MR. HARNAGE:  Those should have been filed

21    with the Court.

22         THE COURT:  Usually they would only be filed

23    if a motion to compel came in.  Let me see.  I have

24    defendants' response to plaintiff's third amended

25    response request to question.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1            MR. DEARINGTON:  I believe interrogatories and

2    requests for production that was certified from

3    September 5, 2014.

4            MR. HARNAGE:  September 5, 2014.

5            MR. DEARINGTON:  I'm not sure that was ever in

6    front of court on part of your motion to compel.

7            MR. HARNAGE:  That was brought up before, I

8    don't remember him name.  Court moderator.

9            THE COURT:  Mr. Hawkins.

10           MR. HARNAGE:  In Hawkins.

11           THE COURT:  Do some relate to the third

12   requests for production.

13           MR. HARNAGE:  Some do, yes.

14           THE COURT:  Why don't I have a copy made of

15   the first requests so I can have it in front of me.

16           MR. DEARINGTON:  I don't know if I have a

17   clean copy.

18           MR. HARNAGE:  I have a copy of your responses.

19   It's clean if the Court would like to.

20           THE COURT:  Are the requests in there too.

21           MR. HARNAGE:  Yes.

22           THE COURT:  Why don't I have a copy made.

23           MR. HARNAGE:  Only one marking just a little

24   arrow next to the names.

25           THE COURT:  Okay.  Why don't you make three

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    copies.

2              THE COURT:  Why don't we start with the third

3    requests because I do have a copy of the defendants'

4    responses to the third set of requests while that copy

5    is being made.

6              Third amended requests.  I have the

7    defendants' responses which is dated June 19, 2015.

8    Which numbers are there issues with respect to?

9              MR. HARNAGE:  Okay.  There was actually

10   followed up, there was a supplemental to the amended

11   third interrogatories.  I have before me the

12   interrogatories.  You want to do interrogatories first

13   or the production?

14             THE COURT:  All I have is the requests for

15   production.

16             MR. HARNAGE:  It should also be an amended

17   third interrogatories.

18             THE COURT:  Why don't you tell me what the

19   issues are with respect to the interrogatories.

20             MR. HARNAGE:  If we could start with the

21   interrogatories because I have that on top,.

22             MR. DEARINGTON:  May I ask which date this is?

23             MR. HARNAGE:  Your Honor response was

24   September 14, 2015.

25             MR. HARNAGE:  Do you have that counsel.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. DEARINGTON:  You're referring to

2     plaintiffs third set of amended interrogatories.

3          THE COURT:  What I think might be faster

4     because I have three other things scheduled today is

5     have you each go through and tell me what your positions

6     are, I'll print out the notes and take copies of the

7     documents and issue a written order on Monday.

8          MR. HARNAGE:  Sounds fine.

9          THE COURT:  Why don't you tell us what they

10    are.

11         MR. HARNAGE:  On Number 20 on the

12    interrogatories,.

13         THE COURT:  I'm going to suggest this.

14    Because I'll have a copy of that document.  You tell us

15    what number, then I'll have Mr. Dearington tell me why

16    he objects and then I'll have you respond to his

17    objection.

18         MR. HARNAGE:  Okay.

19         THE COURT:  So Number 20.

20         Mr. Dearington you object, you have an

21    objection to Number 20.

22         MR. DEARINGTON:  Your Honor, the documents

23    he's pointed me to doesn't have a number 20.

24         THE COURT:  Maybe you can go and see what he's

25    looking at.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. HARNAGE:  Your responses don't have --

2          MR. DEARINGTON:  These were the updated

3     responses after our meet and confer.

4          MR. HARNAGE:  This is the one where you stood

5     on your objection.  Number 20.  What you you're looking

6     at is only the responses.  This is the one where you

7     stood on your objection to Number 20.

8          MR. DEARINGTON:  I have it Your Honor.  I

9     apologize.  There's just been so much discovery and

10    responses and a meet and confers and updates that so

11    much has been produced to the plaintiff, so I apologize.

12          THE COURT:  Would it be helpful to let you

13    meet and able to give me a nice summary in a quicker

14    fashion.

15          MR. DEARINGTON:  I've spoken on the phone with

16    Mr. Harnage three times in the last week.  So we have

17    met.

18          THE COURT:  We're dealing with the third

19    requests.

20          MR. HARNAGE:  I have my notes and I any I'm

21    pretty clear on where we need to go with it.

22          THE COURT:  Number 20.

23          MR. HARNAGE:  Twenty.

24    A.   Inned inned Number 20.

25          MR. HARNAGE:  Amended third interrogatories.

      ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          THE COURT:  That's where we have an issue then

2     I'm going to hear your objection.  Then way.

3          MR. HARNAGE:  You don't want to hear what the

4     issue is.

5          THE COURT:  I'll read it.  I'm going to get a

6     copy of those documents before you go.

7          MR. HARNAGE:  Thank you Your Honor.

8          MR. DEARINGTON:  Your Honor, I believe the

9     Court has spoken to us about

10    ^^^^Mr. Interinterrogatories a told that to Mr. Harnage

11    and he refuses to acknowledge.  Defendants object to

12    this because it calls for speculation.

13         THE COURT:  What's the subject matter.

14         MR. DEARINGTON:  Want me to read it to Your

15    Honor.  It's very brief.

16         THE COURT:  Sure.

17         MR. DEARINGTON:  State the actions you take

18    upon the report of an officer retaliating against an

19    inmate for filing lawsuits or whether or not you took

20    such actions in relation to grievances of inch hate ^

21    defendants object to this.  I believe we spoke with the

22    Court that this actually called for speculation.  In our

23    discussions we agreed that Mr. Brighthaupt would answer

24    what he did under these circumstances.  Mr. Brighthaupt.

25         THE COURT:  I remember it.

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          Mr. Harnage.

2          MR. HARNAGE:  Your Honor, my notes have that

3     we discussed an interrogatories Number 27 and I don't

4     know that it's in this one.  It is in this one.  My

5     notes say that paragraph Number 27 is the one counsel is

6     referring to that the court discussed with me in a

7     telephone conference with counsel.  Interrogatories

8     Number 27.  This is a separate one.  It asks for warden

9     Brighthaupt's position on what he does when he receives

10    a --

11         THE COURT:  I understand.  And that's the same

12    type of issue though and it will be resolved the same

13    way.

14         What's the next number.

15         MR. HARNAGE:  Next number is Number 23.

16         THE COURT:  And what's your concern on

17    Number 23, Mr. Dearington?

18         MR. DEARINGTON:  The objection that defense

19    had here is this is overly vague and also calls for

20    legal analysis to defendant whether it prevented

21    Mr. Harnage from exhausting his administrative remedies.

22    I even posted this question to the defendant and he

23    said -- it does call for legal analysis and I advised

24    him on that but he said that whether it prevented him

25    from filing grievances he needed more information.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1     There was no time here.

2              THE COURT:  And is all that spelled out in

3     your written objection.

4              MR. DEARINGTON:  Objection to the extent this

5     calls for legal analysis.

6              THE COURT:  You don't have to read it.  I'm

7     just asking.

8              MR. DEARINGTON:  Yes, Your Honor.

9              THE COURT:  So if I were to get your -- if I

10    were to get the list of where you have disagreements and

11    I were to get the list of interrogatories and requests

12    for production and your objections, I would have all the

13    papers I need to resolve the issues?

14             MR. DEARINGTON:  I believe so Your Honor.

15             THE COURT:  Okay.  We have Number 20,

16    Number 23.  What other interrogatories do we have in the

17    third -- just give me the numbers.

18             THE COURT:  I believe Number 23 doesn't give

19    my position.

20             THE COURT:  Okay.

21             MR. HARNAGE:  Again, motion to compel didn't

22    have that response to his objections in it.  So if I

23    could just for a moment state.

24             THE COURT:  Well, actually what I was going to

25    do.  I want to get the list and then I'm going to

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    propose that we go through and have you give your

2    position to your -- your response to the objections.

3              MR. HARNAGE:  All right.

4              THE COURT:  So we have 20, 23, 27 was

5    precluded by order.

6              THE COURT:  Yes.

7              MR. HARNAGE:  I guess my position was that I

8    think maybe the Court erred on that.

9              THE COURT:  Twenty-seven you want reviewed.

10   What other number.

11             MR. HARNAGE:  Number 38.

12             THE COURT:  And what other numbers.

13             MR. HARNAGE:  That's it for that requests for

14   interrogatories.

15             THE COURT:  And then for the third request do

16   we have issues with to the requests for production?

17             MR. HARNAGE:  We do.

18             THE COURT:  What numbers do we have there.

19             MR. HARNAGE:  Give me one second, Your Honor.

20             MR. HARNAGE:  We have Number 1, Number 4,

21   Number 7 and 8,.

22             THE COURT:  Okay.

23             MR. HARNAGE:  Number 10, Number 12, 16, 17, 18

24   and 20 21, 22, 23, 24 - I'm sorry, exclude 24.  That was

25   complied to this morning.  Twenty-six and 27 and

         ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    Number 32.

2         THE COURT:  And I think I have the defendants'

3    responses here.  It's dated June 19th, 2015.

4         MR. DEARINGTON:  That's right, Your Honor I'm

5    not sure if Your Honor remembers this but at one of our

6    meetings in court the plaintiff had submitted all these

7    interrogatories and production combined together and the

8    Court asked him to separate them out a and for

9    defendants to provide their responses very quickly.  A

10   loft these have their responses where defendant will

11   look into this just because we needed -- it took me

12   several weeks to look into some of these things.  Many

13   of these things were produced to the plaintiff and so we

14   have updated including the production.  I don't think

15   the Court needs no look at all the production itself but

16   the defendants' cover letter addressing some of the of

17   these things that were provided to the plaintiff.

18        THE COURT:  But does that eliminate the number

19   of requests that Mr. Harnage just went over?  I was

20   assuming.

21        MR. DEARINGTON:  Just for example, Your Honor,

22   Number 4 he asked for copies of the photo of a suing

23   needle or metal object to a point that was a subject of

24   a disciplinary report that he received.

25        THE COURT:  I'm looking at it.

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1         MR. DEARINGTON:  It produced safety and

2    security reasons.  I didn't know whether they actually

3    had that at that time so I put an objection on the

4    record.  I followed up with the facility and they told

5    me no photos exist so there's nothing responsive to

6    that.  In our opinion, as Your Honor just asked, that

7    one would be moot.  There's nothing responsive.

8         THE COURT:  You have the third -- the June 19

9    document Mr. Harnage.

10        MR. HARNAGE:  I do.

11        THE COURT:  So you can -- we can all look at

12   Number 1 and see the answer or objection.

13        MR. HARNAGE:  Number one, Your Honor?

14        THE COURT:  Yes.  You wanted to comment on the

15   objection or respond to the objection?

16        MR. HARNAGE:  It was my position that in that

17   regards, Your Honor, counsel and I had conferred and we

18   had agreed to reconsider that a request of the post log

19   for that position.

20        THE COURT:  Was that produced?

21        MR. HARNAGE:  No, it was not.  There --

22   counsel did produce to me the policy coordinator.

23   Policy director or coordinator.

24        THE COURT:  So you all had agreed to consider

25   this to be a request for the post log.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1            MR. HARNAGE:  Yes.

2            MR. DEARINGTON:  Your Honor, I would like to

3     say my notes don't reflect that my notes reflect the

4     plaintiff asked me he would withdraw if I provide the

5     person who was responsible for -- head of the unit who

6     does the administrative directives and policy.  That was

7     provided to the plaintiff.  I don't have my notes

8     anywhere that I agreed to produce the post log.  In our

9     recent conversation post logs are irrelevant.

10            THE COURT:  Well, if there's no agreement then

11     I'll rule on what's here.

12            MR. HARNAGE:  It's my understanding, just so

13     we're clear, that counsel was going to provide me the

14     policy unit director at the time of the initiation of

15     the administrative directives we are talking about.  It

16     doesn't have to be the policy coordinator for the

17     present if that's not the time that we're talking about.

18            THE COURT:  I understand.  I'm going to route

19     on the request and the objection as written because

20     there is no agreement to revise it.

21            So that's Number 1.

22            Then Number 4, I understand the updated

23     response is that they do not exist.

24            MR. HARNAGE:  It was my concern that it

25     appeared that the document was omitted intentionally

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1   from the disciplinary report package.

2           THE COURT:  But the current report is that

3   there is no such document; is that correct

4   Mr. Dearington?

5           MR. DEARINGTON:  That's correct, Your Honor.

6   I'm grabbing my updated responses.

7           THE COURT:  Okay.  I'll wait.

8           While we are waiting Mr. Harnage you can

9   prepare on Mr. Seven, be looking at Number 7.

10          MR. HARNAGE:  Yes, Your Honor,.

11          THE COURT:  We're waiting for Mr. Dearington

12  to get his papers I wanted to give you a heads-up.

13          MR. DEARINGTON:  Thank you Your Honor.  I

14  dated July 17, of this year, Number 4, no responsive

15  documents.

16          MR. HARNAGE:  And Number 7.

17          MR. HARNAGE:  Number seven had to do on the

18  training materials.

19          THE COURT:  I didn't rule on this one before?

20  This seems awfully familiar.

21          MR. HARNAGE:  It was my impression that the

22  Court the ordered that the training materials be

23  provided in both Number 7 and Number 8.

24          THE COURT:  Well, what has been provided, if

25  anything.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. HARNAGE:  Nothing in that regards, Your

2     Honor.

3          MR. DEARINGTON:  Your Honor, I don't believe

4     there's any ruling from the Court on this.  There is an

5     objection.

6          THE COURT:  I read and it's overly broad and

7     vague.

8          Okay.  Number 10?

9          MR. HARNAGE:  Number 10 had to do with the

10    certificate of completion, Your Honor.

11         THE COURT:  Have you gotten any materials

12    material as to training.

13         MR. HARNAGE:  None at all, Your Honor.

14         THE COURT:  That any of the defendants have

15    undergone.  No documents with respect to any training.

16         MR. HARNAGE:  No, sir.

17         MR. DEARINGTON:  None has been produced Your

18    Honor.  But defendants have produced by my count I

19    believe nearly over thousand pages of documents.  It's

20    not an amount of medical records that took a couple of

21    hours.  The plaintiff here has over 60 production

22    requests.  The defendants is cert their overall

23    objection that this is proportional to this case.  The

24    plaintiff is disrupting DOC facilities with just the

25    shear amount of discovery that he's been seeking.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1           THE COURT:  I'm not looking at specifically

2      this interrogatory.  I'm just asking -- I assume what

3      the plaintiff wants to do is make an argument based on

4      the training that defendants receive is such that they

5      should have known certain things.  Has he gotten any

6      information as to kinds of training in general the

7      defendants undergo?

8           MR. DEARINGTON:  The Cheshire inmate handbooks

9      have been provided, administrative directives going back

10     several years, different verses have been provided to

11     him.  The training materials have not been provided.  If

12     Your Honor looks at this question, this production

13     request, it has to show that inmate has a due process.

14          THE COURT:  That's I'm not going to order.

15     What I wanted to do was step back from this very precise

16     question and go generally to the topic of training in

17     general.  If the plaintiff were seeking materials about

18     what kind of training have the defendants had?  Usually

19     a defendant comes in and they're asked, you were hired,

20     you underwent some training, you had some continued

21     training, you're familiar with the directives and

22     policies, you tell.  You tell me you've already produced

23     the directives and policies.  So if the defendants were

24     to testify to the jury and say welling and as part of my

25     hiring and being competent in my job I underwent and I

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    under go certain training.  I think that's what

2    Mr. Harnage is seeking.

3         MR. DEARINGTON:  I understand.  He's had ample

4    opportunity to ask those types of questions.

5    Interrogatories, he's submitted a flurry of

6    interrogatories to the defendants refresh your

7    recollection already.  If he wanted to ask those

8    questions he could have.  Now for me to discuss I

9    believe there are nearly 20 defendants in this case to

10   sit down with every defendant, some of these are people

11   who are retired and been with DOC over 20 years.  To sit

12   down and discuss with every one of them and discuss

13   every training they got from the DOC and to go back over

14   20 years and retrieve all those training materials.  The

15   defendant would object as to how they are relevant and

16   the burdensome nature of this.

17        THE COURT:  Why don't I make sure I understand

18   from Mr. Harnage the relevance so I ask do as

19   appropriate weighing.

20        MR. HARNAGE:  My position is exactly as Your

21   Honor was discussing.  I need to be able to identify

22   that they received the training and that they are

23   qualified in their positions to undertake the duties

24   that they were hired to perform and that Mr. Brighthaupt

25   in fact enforced his duty to make sure that they were

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1       properly trained before supering and undertaking the

2       duties as a correctional officer.

3                THE COURT:  What claims do these relate to as

4       opposed to simply the defendants.

5                MR. HARNAGE:  To several of the claims

6       including predominantly the one where I was assaulted

7       and Mr. Cruz is making multiple threats and statements

8       that he was going to jump on me and the officers took no

9       action.  Although part of my claim is that they took no

10      action because it was retaliatory for me filing

11      grievances, it's also part of my claim they didn't

12      perform their duty to follow the administrative

13      directive to prevent me from harm.  They knew that

14      Mr. Cruz was making these threatening statements.

15               THE COURT:  I'm pretty confident that the

16      administrative directives will not allow for unlawful

17      assault on an inmate.  They don't need to be trained to

18      know they don't do that.

19               MR. HARNAGE:  Well that's my position.  I need

20      to know if they were trained.  And if they were, if they

21      have training materials that show that they were trained

22      in this, when an officer gets on the stand and says I

23      was never told that, you can't try to push it off on the

24      state as a lack of training.  I want to be able to

25      contradict that statement if that testimony is elicited.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1      THE COURT:  So it's to contradict statements

2  that might be made.

3      MR. HARNAGE:  That would also be a relevant

4  part of it.

5      THE COURT:  So that would be -- that was

6  Number 10.

7      MR. HARNAGE:  If I may, Your Honor, for a

8  second.  I would just like to state for the record,

9  counsel keeps insinuating that I received these

10  thousands of pages of documents.  I just want to point

11  out for the record that counsel has supplied me hundreds

12  of documents that I never asked for.

13      THE COURT:  We've gone over this before.  I

14  just want to resolve the issues.

15      MR. HARNAGE:  I understand.

16      THE COURT:  I don't want to have side

17  speeches.

18      MR. HARNAGE:  I don't want counsel putting up

19  this front --

20      THE COURT:  Number 12.  Why do you want

21  Number 12?  What cause of action is it relevant to?

22      MR. HARNAGE:  Well, it's relevant to where I

23  received the disciplinary report for that same conduct,

24  for having legal document with another inmate's name on

25  it.  If my claim is they are retaliating against me and

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    giving me a ticket or a disciplinary report for

2    something no other inmate has been ticketed for.

3              THE COURT:  All right.

4              And then Number 16.  That one is actually an

5    interrogatories.

6              There are a whole series of these that I've

7    already ruled on things that are similar to them where

8    you say produce the identity or any document

9    identifying.  Those are interrogatories and I think I

10   addressed those when we were here some time ago.  So I'm

11   going to be consistent on anything that's phrased like

12   that.

13             So that takes care of 16, 17, 18, Number 20.

14             That brings us to Number 21.

15             MR. HARNAGE:  Your Honor, if I may, if we

16   eliminated the first section of that, just produce the

17   identity --

18             THE COURT:  I've already ruled on this.

19             Number 21.  Did the defendants arrange for you

20   to view that?

21             MR. DEARINGTON:  Yes, Your Honor.  Copies of

22   the DVDs were sent to the facility with instructions to

23   staff there to make those DVDs available for plaintiff's

24   inspection and such as been done.

25             THE COURT:  Okay.  What's your objection?

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    MR. HARNAGE:  My position is I asked for the

2    copy of it to be produced to me.

3              THE COURT:  That you could keep.

4              MR. HARNAGE:  I have a physical copy.

5              THE COURT:  Okay.

6              MR. HARNAGE:  Counsel claimed in discussion it

7    would create a safety and security risk because it could

8    be broken and used as weapon.  We have audio CDs that we

9    purchase from the facility all the time that are no

10   different than the same subject material that the DVD

11   for the video recordings are on.

12             MR. DEARINGTON:  Your Honor, I would like to

13   address that.  I was mistaken when I told the plaintiff

14   that that was the safety and security reason.  I was

15   confusing it with another case of mine with an inmate

16   who's housed at northern correctional institution.  That

17   was a serious concern that was brought to my attention,

18   providing CDs to inmates that could be fashioned into a

19   shank and injury staff.

20             I have told the plaintiff in our subsequent

21   telephone conversation that I have spoken to staff and

22   other people, producing DVDS showing the layout, how

23   staff respond to an incident, the tools that staff has,

24   although the plaintiff certainly has a right to see that

25   in his case, disclosure of a physical copy where he can

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    put his copy on you tube.

2              THE COURT:  I understand.

3              MR. DEARINGTON:  Thank you.

4              MR. HARNAGE:  Your Honor, if I may.

5              THE COURT:  I have people waiting for me for

6    my 1:00 and I don't want to keep them waiting too long

7    so I've decided that one.

8              Number 22 that's the same thing as Number 21.

9              Number 23, why do you want the video recording

10   of the transportation of Mr. Cruz?

11             MR. HARNAGE:  I need to be able to identify

12   statements that were made to officers state in their

13   reports that Cruz made to the officers and to be able to

14   verify them and the entire context of what he said and

15   what he said it.  Because I also received a DR.  If you

16   recall, Your Honor, in the complaint I allege that they

17   took me in for the investigation, put me in

18   administrative detention and then released me when they

19   found out that I was assaulted and attacked and did not

20   engage in mutual combat.

21             THE COURT:  So you want to see Mr. Cruz's

22   statements.

23             MR. HARNAGE:  His statements and being

24   transported --

25             THE COURT:  We have to be a little more

         ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    efficient here.  You want to see Mr. Cruz's statements.

2         MR. HARNAGE:  I want to see Mr. Cruz's

3    statements and his physical condition.

4         THE COURT:  And his physical condition.

5    Mr. Dearington.

6         MR. DEARINGTON:  I believe Mr. Cruz was stated

7    in.  I reviewed the DVD myself.  There's a video.  It

8    shows his escort to RHU, shows him being strip searched.

9    I don't see how his strip search is relevant to the

10   claims and it is bit intrusive to that another inmate to

11   let Mr. Harnage view that.  If there's some concern

12   about statements that were made, I can submit that for

13   an in camera review.  I've watched it myself.  There's

14   very few there.

15        THE COURT:  Fine.  I'll do that.  I'll an is

16   he do that.

17        MR. DEARINGTON:  Or let him listen to the

18   audio without viewing the footage.

19        MR. HARNAGE:  There's also the issue of the

20   physical condition where Cruz alleged that I hadbit him

21   or assaulted him on the arm.

22        THE COURT:  Was his position adopted by the

23   defendants?

24        MR. HARNAGE:  Sorry?

25        THE COURT:  Was his position adopted by the

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    defendants?

2         MR. HARNAGE:  It is my understanding that

3    they're going to rely on in their defense that that bite

4    constituted the reason I was taken back into

5    administrative detention given a DR for fighting.

6         THE COURT:  So you want to see if you can see

7    a bite on his arm?

8         MR. HARNAGE:  I believe Mr. Cruz because he

9    was brought into administrative detention before me

10   inflicted that wound on himself because I never bit him.

11   I believe in his transport, because the camera operator

12   stands back --

13        THE COURT:  So what you're going to do is you

14   want to look at the video because you want to hear what

15   he said.  Mr. Dearington has offered the audio.  And

16   Number 2, you want to be able to see his arm to be able

17   to say the video shows there's no bite on his arm.

18        MR. HARNAGE:  That's correct, Your Honor.

19        THE COURT:  I'll -- I guess I'll have somebody

20   look at the video for me and then I can balance whether

21   it's --

22        MR. DEARINGTON:  That's fine I want to bring

23   to Your Honor's attention quickly.  It should be fine

24   for the Court to review.  It's not night vision.  I

25   apologize.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          THE COURT:  So review.

2          And then 26?  That one is like Number 16, as

3    is Number 27 and Number 32 is also.  Okay.

4          So that was the third request for production.

5          Did we have -- did we talk about

6    interrogatories on the third request or not?

7          MR. HARNAGE:  We did.

8          THE COURT:  We have 20, 23, 27 and 38.

9          MR. HARNAGE:  That's correct, Your Honor.

10          THE COURT:  So we've covered those.  Then that

11    brings us to the first interrogatories and requests for

12    production.

13          Which ones do we have issues with respect to

14    there?

15          MR. DEARINGTON:  While the plaintiff is

16    looking, Your Honor, just to bring to your attention, we

17    met and conferred and there were updated responses

18    produced to the plaintiff in this case for many of

19    these.

20          THE COURT:  For the first -- Do you have a

21    copy of that with you?  If not I'll have you send it

22    over.

23          MR. DEARINGTON:  Thank you.

24          MR. HARNAGE:  On request Number 1, we have

25    Paragraph Number 2.  I think five -- let me just check,

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    Your Honor --

2         MR. DEARINGTON:  I do have a copy, Your Honor,

3    if you wish to have a copy for yourself right now.

4         THE COURT:  All right.

5         MR. DEARINGTON:  May I approach the clerk?

6         THE COURT:  Yes.  Which numbers.

7         MR. HARNAGE:  Number 2.  Number 5 has to do

8    with the video so we're not going to discuss that.

9    Number 8, numbers 22 and 23, Number 31, 34, and 36..

10        THE COURT:  So the objection is that the

11   defendants have provided you with copies of your

12   grievance records with any necessary redactions.  What

13   part of the response are you taking issue with,

14   Mr. Harnage?

15        MR. HARNAGE:  Well, there's investigative

16   notes that are part of that grievance record.  It was my

17   understanding in one series I did receive them and one

18   series of other grievances I didn't receive them.  So

19   I'm looking for the investigative notes that I haven't

20   received.  But I'm also looking for the person who wrote

21   those investigative notes.  Some of them are identified,

22   some of them are not.  So I'd ask that counsel identify

23   who those people were.

24        THE COURT:  Mr. Dearington.

25        MR. DEARINGTON:  Thank you Your Honor.  He

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    brought this to my attention on Wednesday so I produced

2    these investigative notes to him and removed many of

3    those redactions with just a small portion.  Some those

4    investigative notes don't have names on them.  So now

5    he's asking me to do an investigation to find out who

6    wrote these things.  Counsel has already provided

7    Mr. Harnage with a list of grievance coordinators at

8    Cheshire during the time period he was there.  If he can

9    try to connect the dots and do some investigation

10   himself he may be able to do that.  But for me to

11   conduct my own investigation to start finding out who

12   wrote what for documents that in our opinion speak for

13   themselves.

14            THE COURT:  And why is it important for you to

15   have the identity of the person who wrote them just so I

16   know.

17            MR. HARNAGE:  Because some of the responses,

18   whether or not they discussed them with Brighthaupt and

19   whether or not they were adequately handled.  But

20   counsel says there's a list of administrative remedy

21   coordinators for the time period I was at Cheshire, but

22   there's always two administrative remedies coordinators

23   at each facility and they overlap.  So out of the two, I

24   don't know which one prepared which grievance or the

25   response to which grievance.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          THE COURT:  Okay.  And then Number 5?

2          MR. HARNAGE:  No.  We resolved that in the

3     other discussion.

4          THE COURT:  That's resolved.  Okay.

5          Then Number 8, which relates back to Number 7.

6     That refers you to Administrative Directive 9.4 as to

7     the policy.  What more are you looking for?

8          MR. HARNAGE:  Number 8 asks for the training

9     materials regarding that policy.

10          THE COURT:  So that's a training materials

11     issue.  I think I know the defense position on that.

12          MR. DEARINGTON:  Also, this is overly vague.

13     He asks for policy removing inmates from the population.

14     I assume what he means is the general population.

15     Removing inmates from population would be I suppose

16     transferring them to another state as sort of a compact.

17     Perhaps my reading is too literal but it is overly vague

18     in that regard.

19          I provided him with the directive that talks

20     about moving inmates to restrictive housing units than I

21     assumed that's he meant and the defendants were trying

22     to be helpful providing that to him.  To go into all the

23     training materials now, this is just a fishing

24     expedition.

25          THE COURT:  That brings us to Number 22 the

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1   response there is that the administrative directive 9.4

2   attachment A1 has been provided.

3            What's your concern about the response that

4   was given, Mr. Harnage?

5            MR. HARNAGE:  My position is that the

6   administrative directive reference and the attachment

7   thereto is not responsive.  That administrative

8   directive has do with administrative segregation.  The

9   request has to do with the sanctions that may be imposed

10  upon an inmate for the disciplinary infraction.  That is

11  not addressed in there or the fact that denial of a

12  communal meal period can be implemented as a sanction

13  for that.

14           THE COURT:  You're saying it doesn't reference

15  denial of communal meal period?

16           MR. HARNAGE:  It does not.

17           THE COURT:  Mr. Dearington.

18           MR. DEARINGTON:  Just to reference that, I

19  think it refers to restrictive housing and what the

20  conditions are in restrictive housing.

21           MR. HARNAGE:  It does in restrictive housing.

22           MR. DEARINGTON:  We spoke on the phone about

23  this interrogatory and he wanted the actual sanctions.

24  And when we spoke about it I told him that

25  administrative directive 9 5 DOCs penal discipline, I

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    provided that to him in my responses.  Although it

2    doesn't reference this, it was part of a package that

3    was provided to him.

4              THE COURT:  When was that?

5              MR. DEARINGTON:  It was actually stapled to

6    these responses.  It was just responsive to some of the

7    other requests.  So he received AD 9.5 code of penal

8    discipline which outlines their discipline and

9    sanctions.  I told him if that was the request is he can

10   refer to that.

11             THE COURT:  Have you looked at that.

12             MR. HARNAGE:  I have looked at AD9.5 and I

13   asked counsel to respond to that.  If I need that

14   response to respond to some summary judgment motion

15   that's coming up, I think it's only proper I have an

16   adequate response.  It's either yes or no.  It can refer

17   to administrative directive 9.5.  But counsel doesn't

18   refer me to --

19             THE COURT:  Well, I think by his statement now

20   we've covered --

21             MR. DEARINGTON:  We spoke about this over the

22   phone.

23             THE COURT:  Well, he now has it on the record

24   that the response to this is see administrative

25   directive 9.5.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. HARNAGE:  Your Honor, I can't attach that

2     response of counsel to a summary judgment motion.  I'm

3     looking for Brighthaupt's position on it.

4          THE COURT:  Counsel's response is not evidence

5     so you wouldn't be attaching that to a summary judgment

6     motion anyway.

7          MR. HARNAGE:  But the interrogatories, Your

8     Honor, it's my position they were directed to

9     Brighthaupt, warden Brighthaupt not to counsel.

10          MR. DEARINGTON:  He could have attached AD 9.5

11     to a summary judgment opposition which outlines all

12     penalties in Section E, The following penalties may be

13     imposed.  It lists reprimand --

14          THE COURT:  I guess I don't understand the

15     concern, Mr. Harnage.  I think it's been responded to

16     sufficiently.  And it's clear now that it's

17     administrative directive 9.5 being furnished in response

18     to this interrogatories.

19          That brings us to number -- looks like

20     Number 23 is the same as Number 22.  And then Number 31.

21     That seems like a legal question.  I mean, yes, as a

22     matter of law.

23          MR. HARNAGE:  That's the reason for asking

24     Brighthaupt the question.

25          THE COURT:  He can't give you a legal opinion.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. HARNAGE:  It's in his duties does he know

2     that that's his duty?

3          THE COURT:  Well, that's not what the question

4     is.  He would be hard pressed to say that he doesn't

5     know that, and I think I would.

6          MR. DEARINGTON:  I agree with Your Honor.

7          THE COURT:  That's not going to be an issue.

8          Number 34 relates to notary services.  I guess

9     it seems -- I don't think it's vague.

10          MR. DEARINGTON:  I agree with Your Honor.  I

11     will withdraw that objection.  But I would stand on the

12     objecting in that it calls for legal analysis in that

13     one of his claims is his denial of notary services

14     violate his constitutional rights.  Mr. Brighthaupt is a

15     retired prison warden.  I don't think he is familiar

16     with what Mr. Harnage's constitutionally entitled to

17     with regards to notary services.

18          THE COURT:  Well, let me just clarify.  Are

19     you asking, Mr. Harnage, whether DOC is required under

20     its policies and procedures to provide notary services

21     or whether DOC is legally required to provide them?

22          MR. HARNAGE:  Under their policy whether

23     they're required.  And I asked previously --

24          THE COURT:  If we limit it to is there a

25     policy requiring DOC to provide notary services --

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. DEARINGTON:  That's fair, Your Honor.

2          THE COURT:  That can be responded to?

3          MR. DEARINGTON:  Yes, Your Honor.

4          THE COURT:  And then number -- are you

5     asking -- I'm not.

6          MR. DEARINGTON:  Your Honor, if I may, we

7     actually met and conferred over this one and the

8     plaintiff agreed to revise his question.  It's he in the

9     most recent package that I provided to the Court.

10    Number 36.

11         THE COURT:  I see it.

12         MR. DEARINGTON:  He agreed that Your Honor.

13         THE COURT:  That one has been revised and that

14    one has been responded to and the answer is no.

15         MR. HARNAGE:  Yes.

16         THE COURT:  So that's covered.

17         MR. HARNAGE:  There was a couple issues Your

18    Honor on documents that were produced.

19         THE COURT:  Have we covered everything with

20    respect to first interrogatories and third

21    interrogatories other than what you're going to tell me

22    now?

23         MR. HARNAGE:  The first interrogatories and

24    the third amended interrogatories and the third amended

25    requests for production, yes, we have addressed all

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    those concerns, Your Honor.

2            THE COURT:  So there are some other issues

3    you're going to cover now.

4            MR. HARNAGE:  There's a couple issues that are

5    in those responses in those materials that we haven't

6    addressed.  I can look through the interrogatories and

7    find out which paragraph number it is, but it may be

8    easier to go by my notes from our last conference

9    between counsel and I.

10           THE COURT:  Why don't you do that.

11           MR. HARNAGE:  Just two issues, I believe.  One

12   is in the reports regarding the assault by inmate Cruz.

13   The officers' reports there was a reference to the

14   inmate that Cruz didn't want to move into the cell with

15   before he assaulted me.  He was supposed to be moved in

16   a gentleman who was labeled as a homosexual.  His name

17   has been redacted from the report.  There are other

18   inmates, one was supposed to move into my cell and there

19   was another inmate that Cruz wanted to move in with.

20   Those names weren't redacted, but the inmate who present

21   was on the tier and could testify as to the mannerism

22   that Cruz was displaying and the threats he was making

23   has been redacted.  And counsel has refused to disclose

24   that information.  So would I ask that be produced

25   unredacted so that I have that along with the other

                ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    inmate names.

2         THE COURT:  Let me make sure I understand what

3    we're talking about.  There's an inmate.  We'll call him

4    inmate X.  Mr. Cruz was supposed to be sharing a cell

5    with this person.  He didn't want to.  And you're

6    looking for that inmate X's identity so that you can

7    find out from that inmate how Mr. Cruz was acting in the

8    presence of that inmate?

9         MR. HARNAGE:  Correct.  I can have him testify

10   to that.

11        THE COURT:  All right.

12        MR. DEARINGTON:  Your Honor, there were

13   incidents reports produced to the plaintiff and it

14   include reference to this inmate.  Mr. Harnage's cell

15   mate said I don't want to be housed with him.  He's a

16   homosexual and disclosed that name.  I don't know if

17   that inmate is a homosexual or not, but I do know there

18   are certain criteria that we have learned through our

19   training and through cases that there are certain

20   factors that can make an inmate more susceptible to

21   internal sexual assault, one of them being if an inmate

22   has homosexual tendencies.  That's learned as part of

23   their training and through the prison rape elimination

24   act.  To produce a document that identifies an inmate

25   whether it's true or not is a homosexual and give it to

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

```
 1    Mr. Harnage where he's free to take it around the
 2    compound, that would be a security concern.
 3              THE COURT:  Are we talking producing the
 4    document or Mr. Harnage learning the person's name?
 5              MR. DEARINGTON:  It's brought up in the
 6    context of my redactions in the document.
 7              THE COURT:  Are you saying he does have the
 8    name of the person already?
 9              MR. DEARINGTON:  He likely knows who the
10    person is.
11              THE COURT:  I understand.  So do you know who
12    the person is.
13              MR. HARNAGE:  I do not know the gentleman's
14    name Your Honor.
15              THE COURT:  I'll ask you all to confer and see
16    if you can report back to me on what I should be
17    weighing in determining whether this person would be
18    call be as a witness, because that's really the
19    question..  That's an open issue.
20              If this person were called -- do we have an
21    agreement that Mr. Cruz -- let me make sure that a
22    couple of assumptions are correct.
23              From what Mr. Harnage is saying it sounds as
24    though what he would put this person on the stand to
25    testify to is how Mr. Cruz was acting close in time to
```

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1  when he came into contact with Mr. Harnage; is that

2  correct.

3          MR. HARNAGE:  That's correct.

4          THE COURT:  So what you would be asking the

5  jury to conclude is that Mr. Cruz acted a certain way

6  with respect to inmate X and shortly thereafter, while

7  he was still in this state of agitation or annoyance or

8  whatever, he was put into the cell with you and he

9  assaulted you.

10          MR. HARNAGE:  No.  That's not the

11  circumstances.  If I may, Your Honor.

12          THE COURT:  Cruz and I were sell mates.  Cruz

13  wanted to move in with a friend of his.  Many DOC didn't

14  want to move him in with his friend so they chose to

15  swap sells with two other inmates.  Cruz was supposed to

16  in from my cell to the cell with the other inmate.

17          THE COURT:  Is that inmate X.

18          MR. HARNAGE:  To inmate X and he didn't want

19  to move in with him because of his proclivities.  Inmate

20  X was on the tier in plain view and audio range of

21  hearing cruise making threatening statements towards me

22  or to the officers about me telling the officers that he

23  was going to assault me, he was going to jump on me in

24  his terms, his language he would jump on me if they

25  didn't switch him into his cell with his friend.

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          THE COURT:  So inmate X is a witness to

2    certain statements that were made by Mr. Cruz.

3          MR. HARNAGE:  Correct.

4          THE COURT:  About what he would do to you.

5          MR. HARNAGE:  About his general demeanor at

6    the time of the incident.

7          THE COURT:  Thank you.

8          MR. HARNAGE:  Then Mr. Cruz walked in the cell

9    and hit me.

10         MR. DEARINGTON:  I wasn't in the facility in

11   the sells that day so I don't know if inmate X was in

12   close proximity or if he had any involvement in this or

13   was even close enough to hear any of this.  I can't

14   speak to that.

15         THE COURT:  What records -- are there records

16   that talk about inmate X?

17         MR. DEARINGTON:  No -- well, there are

18   incidents reports that his his name was redacted inmate

19   Cruz said he did not want to be a cell mate with inmate

20   X because he's homosexual.

21         THE COURT:  Are there any records that talk

22   about him witnesses what Mr. Harnage says he witnessed.

23         MR. DEARINGTON:  None that I've rea reviewed.

24         THE COURT:  ^ this is based on your

25   observation seeing that inmate X was there.

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          MR. HARNAGE:  Yes, Your Honor this was an

2    incident that over a Howard period much they went

3    Mr. Cruz to go soon.

4          THE COURT:  You could identify him but you

5    don't know his name.

6          MR. HARNAGE:  Correct.  ^ ^ (.

7          THE COURT:  What's the second issue.

8          MR. HARNAGE:  The final issue, Your Honor, is

9    copies of the area that we're discussing, pictures of

10   Cheshire itself, the housing unit and the sells within

11   it and the housing unit of restrictive housing unit and

12   the sells within that area.  In other cases I've had the

13   assistant United States Attorneys have produced the

14   pictures as necessary because it prevents any safety and

15   security concerns of me being transported to the

16   facility and having eye lap attorney to come in and take

17   pictures of the location we're talking about.  I've

18   asked counsel for them and he stood by his objection

19   that he doesn't want to have to produce the pick tux.

20   In each other instance the DOC officers who have cameras

21   on facility grounds have gone around and taken the

22   pictures in the Harnage versus Murphy out of a New

23   London, they were officer were able to AP area and

24   there's no safety and scar tea issue because they did

25   take pictures of exterior dorse.

        ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1          THE COURT:  Why do you want the pictures your

2     looking for.

3          MR. HARNAGE:  Because it would hoe is the

4     discrepancy in the housing units, when I'm sitting here

5     talking to the jury and the area and lotion of my

6     assault in regard to the Alex Cruz incident I want to

7     show the jury so they have a good mental picture of what

8     we're talking about.

9          THE COURT:  So you want the pictures for use

10    as trial.

11         MR. HARNAGE:  For use at trial and possibly at

12    summary judgment also.  Because I haven't gotten into

13    the last two summary judgment motions answer making the

14    argument I won't know if I need them or not.

15         THE COURT:  Are these areas you've seen.

16         MR. HARNAGE:  I see them on a daily basis Your

17    Honor.

18         THE COURT:  Then I don't think you need them

19    for discovery, certainly, to oppose the summary judgment

20    motion because you could describe what's important about

21    them in your own words.

22         We'll talk about exhibits for trial later.

23         MR. HARNAGE:  It's also for summary judgment.

24    If I need to show the area in a summary judgment.  I

25    mean surely the Court would have a lot better idea if

          ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    I'm references.

2            THE COURT:  I have a good idea if you told me,

3    because if you attached a picture you would just be

4    telling me what I need to see by looking at the picture

5    and I would be drawing all inferences in your favor.

6            Let me just ask, what's the objection, if

7    others have produced them.

8            MR. DEARINGTON:  Interfere with the facilities

9    enough to respond to all this discovery.  They want to

10   employ staff I don't know if it would be overtime to get

11   DOC equipment and to take pictures and do investigatory

12   work for something he can personally explain to the

13   jury.  Essex planed to the Court or demonstrated to the

14   Court how something he is ^.

15           THE COURT:  Your objection is he's asking to

16   you to go out and create things that don't exist.

17           MR. DEARINGTON:  That's correct.  In addition

18   to safety and security this goes to the whole DVD thing

19   of disclosing the facility layout, how facilities are

20   stocked.  Both objections Your Honor.

21           MR. HARNAGE:  Your Honor if counsel would like

22   to arrange an opportunity for me to go to the facility.

23           THE COURT:  If you all can work something out

24   fine, otherwise I'll rule.

25           MR. DEARINGTON:  In addition Your Honor he's

         ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

```
1    no longer housed at that facility so I don't know hour

2    he would be transported there.

3              THE COURT:  I don't need to hear any more.

4              MR. DEARINGTON:  Thank you Your Honor.

5              THE COURT:  So I have by my notes to look at

6    the DVD, I have to think billion the issue of training

7    records and I have to think about the issue of inmate X.

8    Otherwise, I have everything I need based on the

9    discussion we had here.  My law clerk is signaling from

10   the window we're ready.  I have what I need to rule on

11   the issues.  And it I'll get something out.

12              When will you get the D.C. D.

13              MR. DEARINGTON:  I have a copy now, I can make

14   a copy in my office so you have it early next we can

15   whatever the Court's preference.

16              THE COURT:  Since I'm going to be reviewing it

17   I should probably mark it as court exhibit so why don't

18   you send one over.

19              MR. DEARINGTON:  Thank you Your Honor.

20              MR. HARNAGE:  If I may, my concern is not to

21   complete discovery.  Your Honor has the motion for

22   summary judgment deadlines in place.  It's always been

23   my understanding in every case that I ever, discovery is

24   set summary or set deadlines on or considered ^ there's

25   issues with my ability to ask for reargument if you deny
```

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1     my right to have pictures.  I don't believe.

2            THE COURT:  We're not going to argue this ad

3     nauseam.  When I -- the reason I'm here talking with you

4     and I had this back and forth is I could hear what you

5     had to say.  And I'm going to make the discovery

6     rulings.  People can ask for reconsideration all the

7     time, but if all they do is present the same arguments

8     that they presented before, it's denied.  That's why

9     you're here.  I have the written materials.  I asked

10    forever argument you could give me and I think I've

11    heard it.  I can't envision a grounds for

12    reconsideration.  And as for discovery usually being

13    completed, I thought we had but there were some residual

14    issues and the reason we're here today and doing it in

15    person so we can move things along because I have

16    imposed deadlines that will not be moved again with

17    respect to responding to the summary judgment motion.

18            If there's something that a party needs in

19    order to respond to a discovery motion -- I'm sorry to a

20    summary judgment motion and it's discovery that should

21    have been produced, then under the rules, if you look

22    Saturday rule 56, you'll see there's a provision that

23    says you can make the point that you need additional

24    discovery and you have to specify exactly what it is in

25    order to respond to this particular issue that's raised

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1    in the summary judgment motion.  But I would expect --

2    we know exactly where the areas are where there's

3    disagreement.  They're very narrow.  And I think by the

4    time I rule there maybe at most one or two areas where

5    you could say, well, I would need the discovery on that.

6           That's the safe guard that you have in terms

7    of not having gotten the discovery that you've been

8    asking for.

9           MR. HARNAGE:  If p I may, Your Honor, my

10   concern as I was getting ready to state you have set a

11   deadline for December 7th for the next response to

12   summary judgment.

13          THE COURT:  Yes.

14          MR. HARNAGE:  And I have just today received a

15   package of materials that were highly redacted that I

16   haven't had a chance to review.  I received them 120

17   minutes before coming in this courtroom much to have

18   that deadline in place and me having not reviewed the

19   documents or to have the judge's orders on what \pay

20   or\payor\ may not required to be produced.

21          THE COURT:  Today is October 30th.  People

22   normally have 21 days to respond to summary judgment.

23   You've got much more than that.  I think that's

24   sufficient.

25          MR. HARNAGE:  Okay, Your Honor.

     ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT

1            THE COURT:  All right.

2                (Whereupon, a recess followed.)

3    1:37 PM

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ROUGH DRAFT - UNEDITED & UNCERTIFIED TRANSCRIPT